**THIS VERSION OF THE OPINION INCLUDES THE JUNE 4, 2010, ERRATA**

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 07-1214

EARLEE KING, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Motion for Reconsideration

(Decided May 28, 2010)

*John F. Cameron*, of Montgomery, Alabama, was on the brief for the appellant.

*Robert Schneider*, with whom *Richard Mayerick*, Deputy Assistant General Counsel, *R. Randall Campbell*, Assistant General Counsel, and *Paul J. Hutter*, General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*,[1] and HAGEL and DAVIS, *Judges*.

GREENE, *Chief Judge*, filed the opinion of the Court. HAGEL, *Judge*, filed a dissenting opinion.

GREENE, *Chief Judge*: Veteran Earlee King appeals, through counsel, a January 8, 2007, Board of Veterans' Appeals (Board) decision that denied him an effective date prior to May 15, 2000, for his award of VA service connection for schizophrenia. Mr. King argues that the Board erred by (1) assigning him a May 15, 2000, effective date, (2) not providing an adequate statement of reasons or bases for its decision, and (3) assigning his appeal an incorrect docket number. In a December 17, 2008, single-judge decision, the Court affirmed the 2007 Board decision. Mr. King timely filed a motion for reconsideration or in the alternative for panel consideration. Mr. King's motion for panel

---

[1] Chief Judge Greene replaced Judge Farley, who issued the December 17, 2008, decision, but whose period of recall service expired. *See* 38 U.S.C. § 7257(b)(2) (providing for period of service for recall-eligible retired judges).

consideration will be granted, the Court will withdraw its December 2008 decision, and this panel opinion will be issued in its stead. Because we hold that (1) a September 1993 VA consultation report noting that a claimant has not appeared for a scheduled examination is not new evidence under 38 C.F.R. § 3.156, and (2) Mr. King's statements to VA health professionals expressing a wish or desire to be service connected that are recorded in medical reports by VA physicians prepared after the examinations do not constitute new and material evidence or informal requests to reopen a claimant's previously disallowed claim for service connection, the Board's January 8, 2007, Board decision will be affirmed.

## I. BACKGROUND

Mr. King served honorably in the U.S. Army from February 1980 to October 1983. Record (R.) at 11, 22. In February 1992, he submitted to a VA regional office (RO) a claim for VA benefits for schizophrenia. R. at 11-14. In May 1992, the RO found that there was no evidence that Mr. King had schizophrenia either during service or at the time he requested service connection and denied his claim. R. at 25. He appealed and, in August 1994, the Board also denied his claim on the basis that there was no evidence that Mr. King was diagnosed with schizophrenia within one year of his service or that he had a current psychiatric disability that was connected to or incurred by service. R. at 47-53. Mr. King did not appeal and that decision became final.

On May 15, 2000, Mr. King sought to reopen his claim for service connection (R. at 60) by presenting VA medical records dated September 1993, March 1995, and June 1997 demonstrating that he had been seen by VA health professionals during that time period (R. at 70, 74, 186). In June 2000, after considering this evidence, the RO found that although some of the evidence submitted was new, none was material evidence sufficient to reopen Mr. King's claim. R. at 114-15. Mr. King appealed to the Board and presented testimony by his mother that he had suffered from schizophrenia-like symptoms since his separation from service. R. at 136-58. On appeal, the Board found that new and material evidence had been submitted since the August 1994 Board decision and reopened the claim. R. at 303-11. Accordingly, the matter was remanded to the RO for additional development.

2

In August 2004, Mr. King was granted service connection for schizophrenia with a 100% disability rating, effective May 15, 2000, the date VA had received Mr. King's claim to reopen. R. at 428-32. He appealed the assigned effective date and, in January 2007, the Board denied him an earlier effective date after finding that there was no "evidence or statement dated prior to the May 15, 2000, application to reopen the claim for service connection for a psychiatric disorder that can be construed as an earlier application to reopen." R. at 4. This appeal followed.

## II. ANALYSIS

### A. New and Material Evidence Submitted within Appeal Period

Mr. King first argues that the findings contained in the September 1993 VA consultation report entitle him to an earlier effective date for his schizophrenia rating. The September 1993 VA consultation report recorded that Mr. King had missed three appointments for testing for a possible diagnosis of schizophrenia. R. at 70. Mr. King argues that the Board erred in failing to recognize that this evidence constituted new and material evidence that was filed with VA during the period he was appealing the May 1992 RO denial of his claim.

Although the effective date of an award based on a claim reopened is generally the date of receipt of the application, if new and material evidence is received within one year after the date of mailing of an RO decision, it may be "considered as having been filed in connection with the claim which was pending at the beginning of the appeal period" that prevents an initial determination from becoming final. 38 C.F.R. § 3.156(b) (2009); *see Young v. Shinseki*, 22 Vet.App. 461, 466 (2009); *see also Muehl v. West*, 13 Vet.App. 159, 161 (1999) (holding that records constituting new and material evidence received within one year after RO decision rendered RO decision nonfinal); 38 C.F.R. § 3.400(q) (2009) (providing that, as to new and material evidence received within appeal period, "effective date will be as though the former decision had not been rendered"). Thus, if such new and material evidence had been submitted and had not been acted upon, Mr. King's claim could still be pending until a decision had been made on that evidence. *See* 38 C.F.R. § 3.160(c) (2009) ("pending claim" is "[a]n application, formal or informal, which has not been finally adjudicated"); *see also Ingram v. Nicholson*, 21 Vet.App. 232, 240 (2007) ("[A] claim remains pending–even for years–if the Secretary fails to act on a claim before him.").

3

That, however, is not the case. New and material evidence is defined as new evidence that either by itself, or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. 38 C.F.R. § 3.156(a). The Board's determination of whether a claimant has submitted new and material evidence is generally reviewed under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Suaviso v. Nicholson*, 19 Vet.App. 532, 533-34 (2006); *Elkins v. West*, 12 Vet.App. 209, 217 (1999) (en banc).

Here, Mr. King has not established that the Board erred in failing to recognize the September 1993 VA consultation report as new and material evidence. His argument that the September 1993 VA examiner diagnosed him as having schizophrenia is not supported by the evidence. A complete reading of the consultation report, which was before the Board, reveals that Mr. King did not appear for his examination and that no testing of his psychiatric condition was accomplished. Thus, no diagnosis of his condition could be provided.

Moreover, Mr. King's argument that evidence contained in the September 1993 VA consultation report entitles him to an earlier effective date merely because it was "received" by VA prior to the August 1994 Board decision is self defeating. Indeed, to the extent that this evidence was received within the appeal period prior to the August 1994 Board decision as Mr. King argues, it is presumed to have been considered in the Board's denial of his original schizophrenia claim.[2] *See* 38 C.F.R. § 20.800 (2009) (appellant may submit additional evidence in connection with claim after appeal to Board has been initiated). Accordingly, any failure by the Board to recognize the September 1993 report as new and material evidence was not erroneous.

## B. Reopening Previously Disallowed Claim

Mr. King next asserts that the documents that he submitted to VA concurrent with his May 2000 application to reopen show prior communications to VA in which he made informal

---

[2] To the extent that Mr. King asserts that the 1994 Board decision ignored the September 1993 medical treatment report, this is an argument that may constitute the basis for a motion asserting clear and unmistakable error (CUE); that argument has no bearing on his appeal of the January 2007 Board decision. *See* 38 U.S.C. § 5109 (CUE is collateral attack on final decision by RO or Board). The Court has jurisdiction only over those CUE arguments that have been finally adjudicated by VA, and no such adjudication has been done in this case. *See Vanerson v. West*, 12 Vet.App. 254, 262 (1999) ("This Court does not have jurisdiction to review claims of [CUE] in the first instance."); *see also Andre v. Principi,* 301 F.3d 1354, 1361 (Fed. Cir. 2002) (holding that "each 'specific' assertion of CUE constitutes a claim that must be the subject of a decision by the [Board] before the Veterans Court can exercise jurisdiction over it").

requests to reopen his disallowed schizophrenia claim. He thus asserts that the Board erred in determining that "the record does not include any communication from the veteran or his representative received prior to May 15, 2000, that may reasonably be construed as an indication he was seeking to reopen his claim for service connection." R. at 4. The Board's determination that a formal or informal claim had not been filed prior to May 15, 2000, will be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Westberry v. West*, 12 Vet.App. 510, 513 (1999); *see* 38 U.S.C. § 7261(a)(3)(A).

Under 38 U.S.C. § 7104(b), the Board has no jurisdiction to consider a claim based on the same factual basis as a previously disallowed claim. *See DiCarlo v. Nicholson*, 20 Vet.App. 52, 55 (2006) (holding that res judicata generally applies to VA decisions). However, the finality of a previously disallowed claim can be overcome by the submission of new and material evidence. *See* 38 U.S.C. § 5108 ("If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim."); *Cook v. Principi*, 318 F.3d 1334, 1339 (Fed. Cir. 2002) (en banc); *see also Andrews v. Nicholson*, 421 F.3d 1278, 1281 (Fed. Cir. 2005). A claimant may submit an application or claim to reopen a disallowed claim, at which point the Secretary, by regulation, must provide some limited assistance. *See Paralyzed Veterans of America v. Secretary of Veterans Affairs,* 345 F.3d 1334, 1341 (Fed. Cir. 2003) (VA will perform document gathering assistance even before claim is reopened); *see* 38 C.F.R. § 3.159(c)(1)-(3) (2009).

Congress has granted the Secretary the authority to prescribe the acceptable forms of applications for benefits by claimants. *See* 38 U.S.C. § 501(a)(2). The Secretary's regulations provide that a claim or application is "a formal or informal written communication requesting a determination of entitlement or evidencing a belief in entitlement, to a benefit." 38 C.F.R. § 3.1(p) (2009). The Secretary has defined an informal claim as a communication or action from the claimant, the claimant's representative, a member of Congress, or the claimant's next friend indicating an intent to apply for a VA benefit. 38 C.F.R. § 3.155(a) (2009). Additionally, the Secretary has specifically prescribed that when a formal claim for benefits has already been filed, "an informal request for increase or reopening will be accepted as a claim." 38 C.F.R. § 3.155(c). And, quite notably, the Secretary by regulation has specifically limited the use of medical

5

examination reports as informal claims to circumstances where a "formal claim for pension or compensation has been allowed or a formal claim for compensation disallowed for the reason that the service-connected disability is not compensable in degree." 38 C.F.R. § 3.157(b).

Mr. King asserts that he presented informal requests to reopen his schizophrenia claim through statements he made to VA medical professionals documented in VA medical records in March 1995 and June 1997. He concedes, however, that, because he was not service connected for schizophrenia until August 2004, the September 1993, March 1995, and June 1997 VA medical records cannot form the basis for an earlier effective date pursuant to 38 C.F.R. § 3.157(b) in their capacity as VA examination reports alone. *See MacPhee v. Nicholson*, 459 F.3d 1323, 1326 (Fed. Cir. 2006); *see also Norris v. West*, 12 Vet.App. 413, 421 (1999) (discussing and explaining interplay between §§ 3.157 and 3.155(c)); 52 Fed. Reg. 27339 (explaining that § 3.155(c) has been cross-referenced to § 3.157 "for instructions regarding circumstances under which a report of examination or hospitalization may be accepted as an informal claim"). For the following reasons, we hold that the March 1995 and June 1997 statements cannot constitute informal requests to reopen pursuant to 38 C.F.R. § 3.155(c) because they fail to demonstrate an intent to reopen a disallowed claim.

Although § 3.155(c) does not define what manner of communication must be considered a "request" for reopening a disallowed claim, our caselaw instructs that it is nearly synonymous to an informal claim for compensation under § 3.155(a). *See Norris*, 12 Vet.App. at 421 ("the only real benefit to a claimant that paragraph (c) provides is that the claimant need not file another formal application for benefits as called for in 38 C.F.R. § 3.155(a)"); *see also* 38 C.F.R. § 3.155(a) (requiring claimants to file formal application after informal claim is accepted and proper form is provided). Further, we have held that an informal claim must be (1) a communication in writing that (2) expresses an intent to apply for benefits, and (3) identifies the benefits sought. *See Brokowski v. Shinseki*, 23 Vet.App. 79, 84 (2009); 38 C.F.R. § 3.155(a); *see also MacPhee*, 459 F.3d at 1325 (holding that VA regulations require claimant to identify benefit sought and indicate intent to apply for benefits); *Rodriguez v. West*, 189 F.3d 1351, 1353 (Fed. Cir. 1999) (informal claim must be in writing); *Brannon v. West*, 12 Vet.App. 32, 35 (1998) (holding that before VA can adjudicate

6

original claim for benefits, "the claimant must submit a written document identifying the benefit and expressing some intent to seek it").

On March 8, 1995, Mr. King presented for treatment at a VA medical center requesting to see a psychiatrist. R. at 186. After his examination, the examiner prepared a VA progress note recommending that Mr. King undergo psychological testing in order to rule out, inter alia, schizophrenia and recorded that he was "n[ot] s[ervice] c[onnected,] but is trying." *Id*. On June 27, 1997, Mr. King was examined by a VA psychiatrist. R. at 74. The report from that consultation noted that Mr. King "wants to file a claim for service[-]connected disability," and that "he filed a claim one time but doesn't know what they did with it. He thinks they said he didn't get t[]reatment in service." *Id*. The VA psychiatrist opined that Mr. King had schizophrenia and mild retardation and suggested that Mr. King apply for service connection but counseled him that he would have to show that during military service he had been treated for schizophrenia. *Id*.

These notations by VA medical professionals in March 1995 and June 1997 that Mr. King was "trying" to obtain service connection and "wanted to file" for service connection especially at that time, without the presentation of any evidence, failed to manifest the requisite intent to reopen a previously denied schizophrenia service-connection claim. *Compare* R. at 74, 186 *with Sagainza v. Derwinski*, 1 Vet.App. 575, 577-79 (1991) (holding that veteran's sister's request to VA to reopen a claim accompanied by evidence of recent treatment for relevant condition constituted informal request to reopen under § 3.155(c)) and *Vda De Landicho v. Brown*, 7 Vet.App. 42, 50 (1994) (holding that specific pleading by appellant's survivor of both notification of appellant's death *and* motion to substitute, served on the Secretary through Court's pleading process, provides "sufficient indication of [an] intention to claim accrued benefits based on the [deceased] veteran's underlying disability.").

Moreover, the VA examiner's suggestion to Mr. King in December 1997 that he file a service-connection claim reveals that neither party had reason to believe that any claim had been presented or would result merely by recording Mr. King's statements in the written examination report. *See Ellington v. Nicholson*, 22 Vet.App. 141, 146 (2007) (holding that no informal claim was filed because veteran lacked intent when there was no reason to believe that application for benefits was being filed by completing medical questionnaire), *aff'd* 541 F.3d 1364 (Fed. Cir. 2008). Further,

Mr. King's statements to the VA examiner indicate that he knew that he had previously filed a formal application for service connection for schizophrenia and that he was uncertain whether his claim was ever finally adjudicated. After such an acknowledgment, it would be incongruent to infer an intent on Mr. King's part to reopen a previously denied claim for the consideration of new and material evidence, especially since, at the time of the statements, the psychiatrist had yet to opine as to Mr. King's psychiatric condition.

We disagree with Mr. King's argument that requiring a level of specificity for an informal request to reopen a claim is too sophisticated a standard for a pro-claimant veterans benefits system. The theory behind creating requirements for recognizing a document as an informal claim is that there must be a reasonable expectation for VA to act in the manner that the claimant intended. *See Ellington,* 22 Vet.App. at 146 ("VA must have some means of distinguishing between legitimate claims and ordinary medical paperwork."); *see also Kluttz v. Brown*, 7 Vet.App. 304 (1994) (informal request to reopen particular claim must be more specific than a general request for a benefit). Indeed, VA has never been obligated to read a claimant's mind but must consider only claims that may be "reasonably encompassed by several factors including: the claimant's description of the claim; the symptoms the claimant describes; and the information the claimant submits or that the Secretary obtains in support of the claim." *Clemons v. Shinseki*, 23 Vet.App. 1, 5 (2009); *see Sondel v. Brown*, 6 Vet.App. 218, 220 (1994) (when issue is not reasonably raised, Board is not required to "conduct an exercise in prognostication").

In Mr. King's case, there is no reasonable expectation that VA would investigate whether new and material evidence existed to reopen Mr. King's finally denied claim based merely on his comments to VA examining physicians expressing a wish or desire for VA benefits.[3] The record

---

[3] Although we do not reach the issue in this appeal, we note that nothing in the regulations contemplates filing such a claim with a VA medical professional. Indeed, VA regulations provide little guidance to a claimant as to what entities within the VA framework are available to receive disability compensation claims and the instructions on a VA form 21-256 (formal application for benefits) state only that a claimant should mail the application to the closest VA office. *See* VA Form 21-526, pg. 5; *but see* 38 C.F.R. § 3.108 (2009) (officers of U.S. State Department are authorized to act as agents of VA in foreign countries and may receive formal and informal claims). Some guidance may be gleaned, however, from VA's structure, which is comprised of various departments within the agency. These departments include the Veterans Health Administration, which oversees veterans' medical care, and the Veterans Benefits Administration, which administers veterans' benefits. 38 U.S.C. §§ 301, 7301, 7701. VA physicians generally fall under the Veterans Health Administration whose primary function is "to provide a complete medical and hospital service for the medical care and treatment of veterans." 38 U.S.C. § 7301. The primary function of the Veterans Benefits Administration is "the

demonstrates that Mr. King was clearly aware that the RO adjudicates applications for VA benefits as he had previously filed a claim for service connection with the RO and subsequently filed a claim to reopen with the RO in May 2000. Mr. King did not communicate with the RO concerning this matter in 1995 or 1997, and thus did not manifest to the RO his intent to reopen his service-connection claim until May 2000. Moreover, contrary to our dissenting colleague's view that it is of no consequence by whom an informal claim is written, VA regulations specifically define those persons who may communicate a claimant's intent to reopen a claim on behalf of the claimant. This list does not include VA medical professionals. *See* 38 C.F.R. § 3.155(a) (listing claimant's representative, members of Congress, and claimant's next friend as persons other than claimant who may file informal claim).

Accordingly, for the above reasons, we hold that Mr. King's statements expressing a wish or desire to obtain service connection recorded in medical reports by VA physicians during the March 1995 and June 1997 VA medical examinations do not constitute new and material evidence or informal requests to reopen his previously disallowed schizophrenia claim. *See Rodriguez* and *Brokowski*, both *supra*; 38 C.F.R. § 3.155(a). Therefore, Mr. King has not established that the Board's finding that there was no evidence in the record that can be construed as an informal claim to reopen prior to his May 15, 2000, application to reopen was an "arbitrary and capricious" application of law to the facts of this case. *See Westberry*, *supra*. Moreover, because we have held that the Board correctly found that Mr. King's application to reopen was submitted in May 2000, as a matter of law Mr. King has not established that the Board erred in finding that he was not entitled to an effective date for his schizophrenia award prior to May 15, 2000, the date he filed his claim to reopen. *See* 38 U.S.C. § 5110(a) ("[T]he effective date of an award based on . . . a claim reopened after final adjudication . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor."); 38 C.F.R. § 3.400 (2009) (implementing regulation); *see Leonard v. Nicholson*, 405 F.3d 1333, 1337 (Fed. Cir. 2005) ("[A]bsent a showing of [clear and unmistakable error (CUE), the appellant] cannot receive disability payments for a time frame earlier than the application date of his claim to reopen, even with new evidence supporting an

---

administration of *nonmedical* benefits programs of [VA] which provide assistance to veterans and their dependents and survivors." 38 U.S.C. § 7701 (emphasis added).

earlier disability date."); *see also Bingham v. Principi*, 18 Vet.App. 470, 475 (2004) ("[I]t is well established that the effective date for an award based on a claim to reopen is generally the date of the claim to reopen.").

## C. Reasons or Bases

Mr. King also argues that the Board failed to provide an adequate statement of reasons and bases for its finding that the evidence of record did not raise any informal claim for service connection. The Board must provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). Mr. King maintains that the Board failed to address whether Social Security records and medical records (R. at 202, 206, 288-89, 334, 738-39) and other correspondence of record (R. at 136, 279) could be construed as a claim to reopen. However, Mr. King has not shown how these documents, some of which postdate his assigned effective date, are relevant to the assignment of his May 15, 2000, schizophrenia effective date. *See Dela Cruz v. Principi*, 15 Vet.App. 143, 149 (2001) (Board not required to discuss all evidence if its discussion of the relevant evidence supports its decision); *see also Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (appellant bears burden of demonstrating error on appeal).

Additionally, although the Board did not specifically address whether the VA medical records from September 1993, March 1995, and June 1997 entitle Mr. King to an earlier effective date, because, as held above, these arguments fail as a matter of law, a remand for the Board to discuss these documents is not appropriate. *See Soyini v. Principi*, 1 Vet.App. 540, 546 (1991) (strict adherence to reasons or bases requirement is improper basis for remand where it "would result in this Court's unnecessarily imposing additional burdens on the [Board] with no benefit flowing to the veteran").

## D. Docket Number Assignment

Mr. King also argues that the Board erred in assigning his claim a 2003 docket number after it was returned to the Board pursuant to a 2001 remand. He requests that, should there be a remand,

his claim be docketed in a manner designed to achieve the swiftest resolution. In light of the disposition of this matter, however, Mr. King's contention is moot.

### III. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the Board's January 8, 2007, decision is AFFIRMED.

HAGEL, *Judge*, dissenting: I write separately to express my disagreement with the majority's conclusion that the Board did not err in finding that Mr. King did not submit an informal claim for benefits. The Court should vacate the Board's finding that Mr. King did not communicate an intention to reopen his claim and remand the matter to the Board to provide adequate reasons or bases for its conclusions. The majority employs the incorrect standard of review, and it should have found that the Board provided inadequate reasons or bases for reaching its conclusion.

#### A. Reasons or Bases

The Board in this case simply concluded that "[t]he record does not indicate any communication from the veteran or his representative received prior to May 15, 2000, that may reasonably be construed as an indication he was seeking to reopen his claim for service connection." R. at 4. This declaration, void of any explanation, constitutes the totality of the Board's consideration of whether Mr. King submitted an informal claim.

The Court's jurisprudence is perfectly clear that, in making a finding on any material issue of fact or law, the Board is required to provide a statement of its reasons or bases for the conclusions it reaches. *See* 38 U.S.C. § 7104(d)(1). In so doing, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

Here, the Board stated that the dispositive question was whether the record contained any communications from Mr. King that could be construed as demonstrating an intent to reopen his previously denied claim for benefits. Because Mr. King's intent to reopen was the central question, the Board was required to discuss whether a notation in a June 1997 treatment record indicating that

11

Mr. King "wants to file a claim for service connected disability" demonstrates an intent to obtain benefits. R. at 74. At the very least, that note is material evidence that should have been discussed before the Board made its finding that Mr. King never communicated a desire to reopen his claim. Because the Board did not explain *why* Mr. King's June 1997 statement did not demonstrate an intent to file a claim for benefits, I cannot comprehend how the majority could find that there was a Board decision capable of review or one that Mr. King could understand. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). Consequently, I would find that the Board provided inadequate reasons or bases for finding that he lacked an intent to apply for benefits. *See Caluza*, 7 Vet.App. at 506.

Accordingly, I dissent from the majority's opinion because I believe that the Court should have considered whether the Board provided an adequate statement of reasons or bases for its finding.

## B. Intent to Make an Informal Claim

Mr. King intended to make an informal claim for benefits. The June 1997 medical record repeating Mr. King's statement to a VA official that he "wants to file a claim for service connected disability" constitutes an informal claim. R. at 74.

As the majority notes, there are three requirements that must be satisfied if the Board is to find that an informal claim has been filed. There must be (1) a communication in writing that (2) expresses an intent to apply for benefits, and (3) identifies the benefits sought. *See Brokowski*, 23 Vet.App. at 84; 38 C.F.R. § 3.155(a). All three requirements were satisfied here. Consequently, the June 1997 treatment note qualifies as an informal claim for benefits.

The first requirement is that an informal claim must be written. The purpose of requiring a writing is not to create a technical hurdle for claimants, but to allow for some precision in determining when an informal claim was made and establishing its general contents. *See Rodriguez v. West*, 189 F.3d 1351, 1354 (Fed. Cir. 1999). The U.S. Court of Appeals for the Federal Circuit stated that an informal claim must be written because "[t]o permit an oral statement to constitute the filing of an informal claim would create serious problems in the operation of the veterans benefits programs." *Id*. Thus, the informal claim must be written to prove that it was, in fact, submitted.

In accomplishing this purpose, it is of no consequence *by whom* an informal claim is written, so long as it is written. The date of the informal claim in this case can be affixed with certainty, as the VA clinical specialist transferred Mr. King's intentions in June 1997. The fact that the writing was done by a VA clinician and not the claimant is irrelevant where the claimant directly communicates this information to the VA official. Nor does § 3.155(a) provide a limitation in its definition of an informal claim as "[a]ny communication or action" from the claimant, a representative, a member of Congress, or a claimant's next friend. Although the communication must *originate* with the claimant, that does not mean that the *writing* must be made by any of the listed individuals. Here, there is no question that Mr. King himself made the communication to VA when he stated that he wanted to make a claim for benefits and a VA employee simultaneously recorded that communication in an official VA document that is now contained in the claims file. Thus, the first element of an informal claim, a writing, has been satisfied here.

The second requirement for an informal claim is that a claimant must express an intent to apply for benefits. In looking for intent, the Board is required to "interpret the appellant's submissions, broadly," although the claimant must have "asserted the claim expressly or impliedly." *Brannon*, 12 Vet.App. at 35.

The statement in the June 1997 VA medical record demonstrates a clear intent to apply for benefits. The VA clinical specialist wrote that Mr King "wants to file a claim for service connected disability." R. at 74. It is clear from this statement that Mr. King told a VA representative that he wanted VA benefits. Given the Board's obligation to interpret such statement's broadly, it is difficult to envision how this statement fails to show an intent to obtain disability benefits.

The majority holds that this statement is insufficient to establish an intent to seek disability benefits because the clinical specialist then told Mr. King that he should apply for benefits. This holding misses the point; the standard is not whether the veteran had a *reasonable* intention to apply for benefits or took reasonable steps to act on that intention, but simply whether there was any intention to obtain benefits. The fact that the VA representative told Mr. King to make the claim elsewhere is of no relevance in evaluating *Mr. King's* intentions.

The underlying assumption seems to be that Mr. King could not have had an intention to seek benefits because he made the request to the *wrong part of VA*. If Mr. King had made the same

13

statement to a Board member or decision review officer at a hearing or to anyone at a VA regional office (i.e., "I want to file a claim for service-connected disability"), there can be no doubt that this statement would have been seen as sufficient intent to seek disability benefits. Then why should the claimant's intent in seeking benefits be determined by the title of the VA representative to whom the statement is made? Certainly the regulation makes no such distinction, and veterans are not expected to be experts in VA's organizational structure. *See Landicho*, 7 Vet.App. at 50 (holding that informal claim requirements were satisfied by serving documents on the Secretary's litigation representatives). Moreover, although it may well be within the Secretary's authority, VA has not promulgated a regulation establishing which of its employees may receive a formal or informal claim. Because I see no basis for concluding that a medical specialist at a VA medical center cannot receive an informal claim, and because Mr. King stated that he wanted to file a claim for disability benefits, I would find that, reading the claim sympathetically, Mr. King displayed sufficient intent that he was applying for benefits. *See Brokowski*, 23 Vet.App. at 84.

The third and final requirement for finding that an informal claim has been filed is that the claimant must identify the benefit sought. A "claimant's identification of the benefit sought does not require any technical precision." *Id*. Again, the Board must interpret a claimant's submission broadly and sympathetically. *Id*.

Here, I would find that Mr. King identified the benefit sought, as he described complaints relating to schizophrenia to a VA clinical specialist before stating that he wanted a "service connected disability." R. at 74. Mr. King was not required to specifically name the condition for which he wanted benefits, as long as he identified the symptoms. *See Ingram v. Nicholson*, 21 Vet.App. 232, 256-57 (2007) (holding that the Secretary, not the claimant, must evaluate whether there is potential to assign benefits for described symptoms). Thus, Mr. King sufficiently identified the benefit sought.

Because Mr. King displayed an intent to seek disability benefits for schizophrenia, and because that intention is memorialized in a writing by a VA official and has since that time been in an official VA record, I would find that Mr. King made an informal claim to reopen his previously denied schizophrenia claim in June 1997. *See Browkowski*, 23 Vet.App. at 84. Because all of the requirements for an informal claim were satisfied, I would find that the Board's finding that there

14

was no indication that Mr. King made an informal claim was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  38 U.S.C. § 7261(a)(3)(A).

For these reasons, I respectfully dissent from the majority's decision.